# EXHIBIT "A"

1 | KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER    Bar No. 278946
2 | ADAM J. MCNEILE    Bar No. 280296
MALACHI J. HASWELL    Bar No. 307729
3 | KATHERINE SASS    Bar No. 326185
1120 Mar West St., Ste. C-2
4 | Tiburon, CA 94920
Telephone: (415) 632-1900
5 | Facsimile: (415) 632-1901
kristin@kbklegal.com
6 | adam@kbklegal.com
kai@kbklegal.com
7 | katie@kbklegal.com

8 | HOUSING AND ECONOMIC RIGHTS ADVOCATES
VERONICA SOTO MILLER    Bar No. 222424
9 | PO Box 29435
Oakland, CA 94604-9435
10 | Telephone: 510-271-8443
Facsimile: (510) 868-4521
11 | vsoto@heraca.org

12 | Attorneys for Plaintiff ADAN ALFARO

**ELECTRONICALLY FILED**
Superior Court of California,
County of Madera
**06/12/2025 at 01:28:40 PM**
By: Ashley M. Sherrod, Deputy Clerk

13

14

15

16    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

17    IN AND FOR THE COUNTY OF MADERA

18 | ADAN ALFARO,      **Case No.** MCV095380

19 |      Plaintiff,      **COMPLAINT FOR:**

20 | vs.

21 |      **I.**    **DECLARATORY RELIEF;**
SUNLIGHT FINANCIAL LLC; CROSS    **II.**    **VIOLATIONS OF THE HOME**
RIVER BANK; NATIONAL RECOVERY      **SOLICITATION SALES ACT**
22 | SOLUTIONS, LLC; and DOES 1 through      **(CIVIL CODE §1689.5,** *et seq.***);**
20, inclusive,    **III.**    **VIOLATIONS OF THE**
23 |      **ROSENTHAL FAIR DEBT**
     **COLLECTION PRACTICES ACT**
24 |      Defendants.      **(Civ. Code §1788,** *et seq.***); AND**
   **IV.**    **VIOLATIONS OF THE UNFAIR**
25 |      **COMPETITION LAW (BUSINESS**
     **& PROFESSIONS CODE §17200,** *et*
26 |      *seq.***)**

27 |      Unlimited Civil Case

28 |      JURY TRIAL DEMANDED

Electronically Submitted on 06/12/25 1:28 PM

COMPLAINT

## INTRODUCTION

1.      The solar market is one of the fastest growing global industries, with a valuation of $154.47 billion in 2020, estimated to balloon to over $1 trillion by 2028.[1] The consumer solar market grew 51% from 2022 to 2023.[2] Though transitioning to green energy is a noble goal, the deployment of consumer products in this burgeoning business has been riddled with systematic failures to afford consumers the basic statutory protections to which they are entitled.[3]

2.      Sunlight Financial LLC ("Sunlight") is a facilitator of home improvement loans that partners with lenders like Cross River Bank ("Cross River"). Sunlight simultaneously partners with contractors like the now-defunct entity Solgen Construction, LLC ("Solgen") to engage in door-to-door sales to offer financial products for home improvements such as solar panel installations. When consumers fall behind on these exorbitantly expensive loans, Cross River then refers these accounts to debt collectors such as National Recovery Solutions, LLC ("National Recovery" and together with Cross River and Sunlight, "Defendants").

3.      Sunlight touts that it "hire[s], train[s] and develop[s] teammates committed to providing service and support as reliable as the sun itself."[4] Sunlight advertises that it "provide[s] comprehensive training and support for solar companies' sales and operations staff, and top-notch customer service for homeowners."[5]

4.      However, in practice, Sunlight and Cross River turned a blind eye to Solgen's misconduct and ratified systematic unlawful activity done to consumers on their behalf.

5.      In California, contracts or offers to consumers solicited outside a company's trade premises are governed by the Home Solicitation Sales Act, Civil Code §§1689.5, et seq.

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion* (Apr. 25, 2022), https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html.
[2] Ctr. for Responsible Lending, THE SHADY SIDE OF SOLAR SYSTEM FINANCING 5 (July 2024), https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-shady-side-solar-financing-jul2024.pdf.
[3] *Id.* at 8 (identifying the harms of solar financing to include misleading sales practices, unscrupulous installers, predatory contract clauses, and other harmful practices such as elder abuse and lack of due diligence); *see also* Consumer Fin. Prot. Bureau, *Issue Spotlight: Solar Financing* (Aug. 7, 2024) https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-solar-financing (listing hidden markups and fees, misleading statements about federal tax credits, misrepresentations about payment terms, and misrepresentations about financial benefits as key consumer risks to solar financing).
[4] https://sunlightfinancial.com/about/ (last visited June 10, 2025).
[5] https://sunlightfinancial.com/solar/ (last visited June 9, 2025).

1    ("HSSA"). Among other requirements, the HSSA mandates that any company making such

2    offer or otherwise soliciting any such contract include in its documentation a written notice to

3    the consumer of their absolute right to revoke and offer and/or cancel the contract in the exact

4    terms set forth in Civ. Code §1689.7. This notice must explain that the consumer has a three-

5    day right to cancel, using precise language specified in the statute. Civ. Code §§1689.6(a)(1),

6    1689.7(a)(1)(B), (a)(4)(A), and (c)(1).

7    6.     The consequence of failing to comply with the HSSA's exacting requirements is

8    straight-forward—a valid contract is never formed because the consumer retains an indefinite

9    cooling-off period for any such contract or offer, such that it is not effective until the consumer

10   receives a *new* contract that is fully compliant with the HSSA. Civ. Code §§1689.6(a)(1),

11   1689.7(g). The HSSA also provides the consumer a right to revoke or cancel, in which case a

12   non-compliant seller is entitled to no compensation whatsoever, not even reimbursement for any

13   past expenditures, and any previous payments must be refunded. Civ. Code §1689.7(a)(4)(A).

14   Courts have described the remedy for failure to comply as "Caveat Vendor."[6]

15   7.     Sunlight and Cross River partner with unscrupulous, fly-by-night contactors like Solgen

16   whose form documents systematically fail comply with the HSSA. As the holder of consumer

17   credit contracts involving its customers and Solgen, Cross River is subject to all claims and

18   defenses that a consumer may bring against Solgen, including cancellation.

19   8.     At the time of Plaintiff Adan Alfaro's ("Plaintiff") alleged transaction, Sunlight and

20   Cross River's contractor partner Solgen was subject to a court-ordered Public Injunction

21   prohibiting virtually identical conduct as in this case, including enjoining Solgen from using the

22   precise form home improvement offer used in this case due to its violations of the HSSA. *See*,

23   *infra*, **Exhibit A**. Nevertheless, Solgen blatantly ignored the Public Injunction and continued to

24   flout California law while Sunlight and Cross River continued to accept and originate new loans

25

26   [6] "If this result appears to deal harshly with merchants who have fully performed under their contracts, it seems clear to this court that the message which the Legislature has attempted to convey by enactment of sections 1689.5

27   *et seq.* of the Civil Code is 'Caveat Vendor.' Merchants, put on notice by the statute, can easily and inexpensively protect themselves, however, by including a right to cancel provision and an accompanying notice of cancellation as a matter of course in all contracts signed outside their trade premises." *Weatherall Aluminum Prods. Co. v. Scott*

28   (1977) 71 Cal.App.3d 245, 249; *see also Nordeman v. Dish Network LLC* (N.D. Cal. 2021) 525 F.Supp.3d 1080, 1087 (approving the same language in a more recent case).

1   to fund projects based on the use of Solgen's enjoined contracts. Thereafter, the Contractor

2   State License Board revoked Solgen's license, and Solgen went out of business.

3   9.      Instead of abiding by its obligations under the Holder Rule, Defendants turned a blind

4   eye to the legal rights of their mutual customers, continuing to demand payment on systems that

5   did not work from a contractor that had disappeared. Cross River then transferred Plaintiff's

6   account to National Recovery, who has continued to take $100 per month from Plaintiff, even

7   after he lawfully revoked any and all contracts or offers.

8   10.     The alleged Solgen Home Improvement Offer (together with the Sunlight/Cross River

9   Loan Agreement Offer, the "Offers") does not comply with the HSSA, as it fails to include the

10  statutorily required language pursuant to Civ. Code §1689.7(a)(4)(A).

11  11.     Despite the Solgen Home Improvement Offer not complying with the HSSA and

12  Plaintiff exercising his absolute right to revoke the Offers pursuant to the HSSA, Sunlight and

13  Cross River have failed and refused to acknowledge Plaintiff's lawful cancellation. Defendants

14  continue to demand monthly payment from Plaintiff and refuse to return all amounts he has

15  already paid. Solgen, which is out of business, unsurprisingly failed to respond at all.

16  12.     Plaintiff brings this action for violation of the HSSA, the Rosenthal Fair Debt Collection

17  Practices Act, Civ. Code §1788, *et seq.* ("Rosenthal Act"), and the Unfair Competition Law,

18  Bus & Prof. Code §17200, *et seq.* ("UCL") to obtain actual and statutory damages, and

19  restitution for the harm that he has suffered as well as declaratory relief and a public injunction

20  against Defendants to enjoin its unlawful, unfair, and fraudulent conduct.

21                                          **PARTIES**

22  13.     Plaintiff Adan Alfaro is an individual. At all times relevant herein, Plaintiff was, and

23  currently is, a resident of the State of California, County of Madera.

24  14.     Defendant Sunlight is, and at all times relevant herein was, a Delaware Limited Liability

25  Company with its principal place of business in New York, that at all times relevant herein was

26  conducting business in the County of Madera.

27  15.     Defendant Cross River is, and at all times relevant herein was, an FDIC-insured New

28  Jersey state chartered bank, that at all times relevant herein was conducting business in the

1    County of Madera. At all times relevant hereto, Cross River extended or offered to extend

2    consumer credit for which a finance charge is or may be imposed or which, by written

3    agreement, is payable in more than four installments, and is the person to whom the transaction

4    which is the subject of this action is initially payable, making Cross River a creditor within the

5    meaning of the Truth in Lending Act, 15 U.S.C. § 1602(g).

6    16.    Defendant National Recovery is, and at times relevant herein was, a New York Limited

7    Liability Company with its principal place of business in New York, that at all times relevant

8    herein was conducting business in the County of Madera

9                                          **DOE DEFENDANTS**

10   17.    Plaintiff does not know the true names and capacities, whether corporate, partnership,

11   associate, individual or otherwise, of Defendants sued herein as Does 1 through 20, inclusive,

12   pursuant to §474 of the California Code of Civil Procedure. Nonetheless, Plaintiff alleges that

13   Defendants Does 1 through 20, inclusive, are in some manner responsible for the acts,

14   occurrences and transactions set forth herein and are legally liable to Plaintiff. Plaintiff will seek

15   leave to amend this complaint to set forth the true names and capacities of the Doe Defendants,

16   together with appropriate charging allegations, if and when ascertained.

17                                          **THE HOLDER RULE**

18   18.    All claims and defenses that Plaintiff has against Solgen arising out of the unlawful

19   transaction are also valid against Cross River because Cross River is the holder of any alleged

20   consumer credit contract. Given the violations of law alleged below, and the Federal Trade

21   Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.*, which subjects the holder of a

22   consumer credit contract to all claims and defenses of the consumer against the seller, Cross

23   River is subject to all claims and defenses Plaintiff may have against Solgen.

24                                          **AGENCY**

25   19.    Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein

26   Solgen employees and/or representatives act as agents and at the direction of Sunlight and Cross

27   River. Sunlight and Cross River retained the right to control the conduct of Solgen, including by

28   (1) requiring Solgen sales agents to use specific software, applications, and technology when

1  engaging in transactions with consumers on Sunlight and Cross River's behalf; (2) controlling

2  the Cross River financial products Solgen sales agents could offer, the terms and conditions of

3  the products offered, the method of presentation of the products offered, and the contractual

4  documents that could be utilized; (3) controlling the marketing and sales tactics of Solgen and

5  its sales agents; and (4) retaining the right to discipline Solgen and sales agents for violations of

6  policies and procedures set by Sunlight and Cross River. At all times, Sunlight and Cross River

7  have ratified the conduct of Solgen and its sales agents, including in the instant case.

### JURISDICTION AND VENUE

9  20.     Venue is proper in Madera County because Plaintiff resides in Madera County,

10  Defendants conduct business in Madera County, and the alleged unlawful actions took place in

11  Madera County.

12  21.     This Court has jurisdiction over Plaintiff's claims because Plaintiff is a resident of

13  California; Sunlight, Cross River, and National Recovery are qualified to do business in

14  California; and Defendants regularly conduct business in California. Furthermore, the acts and

15  omissions complained of herein occurred at locations in California.

### FACTUAL ALLEGATIONS

17  **A.   Sunlight and Cross River's Business Models and Partner Program**

18  22.     Sunlight utilizes a paperless point-of-sale system for generating consumer loans made

19  by partner financial institutions like Cross River. Sunlight, after receiving funds from Cross

20  River, disburses the funds to Sunlight's partner contractors to finance home improvement

21  projects for individual consumers. The consumer never receives any portion of these "loans."

22  Instead, the loan amounts are transmitted directly to the Partner contractor. A significant portion

23  of financed projects involve the installation of solar panels. Customers cannot apply directly to

24  Sunlight for a home improvement loan. Instead, Sunlight will process a loan application only if

25  it is presented through a Partner, with the proceeds of the loan being disbursed directly to the

26  Partner.

27  23.     Sunlight is one of the largest loan facilitators in this segment of the consumer

28  marketplace. Sunlight touts that it has processed over one million credit requests, funded over

1    $10 billion in loans, and has over 1,850 active contractors with whom it works.[7] In the first

2    quarter of 2023 alone, Sunlight, with its bank partners like Cross River, funded $627 million in

3    solar panel and home improvement loans.[8]

4    24.     Sunlight designed, implemented, and oversees the "Sunlight Program." Under the

5    Sunlight Program, the home improvement contractors are deputized to simultaneously sell

6    customers home improvement projects and arrange financing for the projects through loans

7    made by Cross River through Sunlight.

8    25.     Sunlight entices contractors to join the Sunlight Program by representing that by doing

9    so they can increase their solar panel (or other home improvement) sales by touting to

10    customers their access to Sunlight's facially (though not actually) advantageous loan terms.

11    Sunlight uses its Partner contractors to submit consumers' loan applications to Sunlight.

12    Sunlight then underwrites and approves the loans. Banks and credit unions, such as Cross River,

13    make and fund the loans, while Sunlight services the loans.

14    26.     Sunlight offers its contractor Partners like Solgen immediate, on-the-spot approval of the

15    loan applications that they submit through an electronic, paperless process. This assures that the

16    Partner contractors can close transactions including the accompanying loan financing in minutes

17    through "e-signing" the documents, usually while the customer is in their home.

18    27.     Solgen participated in the Sunlight Program and was one of Sunlight's Partners.

19    28.     Every home improvement transaction financed by a Cross River-funded loan through

20    the Sunlight platform follows a similar pattern: a contractor's salesperson engages with a

21    consumer somewhere other than the seller's place of business, persuades the consumer to enter

22    into a home improvement offer or contract to be financed by Cross River, and applies for and

23    obtains authorization for financing through Sunlight's platform in the form of a Loan

24    Agreement Offer. Because the transactions take place other than at an "appropriate" trade

25    premises (i.e., a store), these transactions must comply with every applicable requirement of the

26

27    [7] https://sunlightfinancial.com/about/ (Nov. 26, 2024)

     [8] Sunlight Financial Holdings Inc. (SUNL) Q1 2023 Earnings Call Transcript, May 15, 2023, available at

28    https://seekingalpha.com/article/4605225-sunlight-financial-holdings-inc-sunl-q1-2023-earnings-call-transcript

     (last visited December 3, 2024).

1  HSSA.

2  29.    On information and belief, the Solgen Home Improvement Offer fails to comply with

3  the HSSA, as it does not include the statutorily required language. Civ. Code §1689.7(a)(4)(A).

4  Sunlight and Cross River failed to acknowledge Plaintiff's lawful cancellation, and instead

5  continued to unlawfully attempt to collect monthly payments from Plaintiff through the debt

6  collector National Recovery.

7  **B.    Solgen's History of Unlawful Behavior**

8  30.    Despite Sunlight's public claims of partnering with only the best contractors and training

9  them extensively, Solgen has a long and storied history of flouting California law. Sunlight and

10  Cross River turned a blind eye to this unlawful behavior.

11  31.    In February 2022, the Fresno County Superior Court Judge Kimberly Gaab entered a

12  public injunction to enjoin nearly identical conduct as in this case. In the case of *Juarez v.*

13  *Solgen Construction*, Fresno Superior Court, Case No. 21CECG02651, the plaintiff alleged,

14  among other violations of consumer fraud statutes, that Solgen's Home Improvement Offer (on

15  information and belief, identical to the form used for Plaintiff in the instant case) did not

16  comply with the Home Solicitation Sales Act, Civil Code §1689.7.

17  32.    On February 3, 2022, the Court entered the Public Injunction. **Exhibit A**. Specifically,

18  the Court enjoined the following behavior relevant to the instant matter:

19     Solgen and its parents, subsidiaries, affiliates, divisions, partners, licensees,
       officers, directors, shareholders, owners, members, employees, distributors,
20     independent contractors, advisors, agents, representatives, insurers and attorneys
       and/or anyone selling, advertising, or promoting solar panels on SOLGEN's behalf
21     are enjoined from entering into contracts outside of appropriate trade premises that
       do not comply with Civil Code §1689.7.
22

23  33.    Solgen was court-ordered to comply with all terms of the public injunction.

24  Nevertheless, Solgen continued to engage in the same unlawful behavior, as evidenced by its

25  treatment of Plaintiff herein.

26  34.    Solgen was fully aware of its blatant and continued violation of the HSSA and the

27  Public Injunction. On or around May 19, 2022, Plaintiff's counsel moved for an Order to Show

28  Cause Re Contempt in *Juarez v. Solgen, supra*. In exchange for withdrawal of the Motion

1  without prejudice, on November 21, 2022, Solgen's CEO Cole Farmer executed a Declaration
2  under penalty of perjury in which he admitted that Solgen failed to immediately comply with
3  the terms of the public injunction – and was failing to comply at the time of the transaction with
4  Plaintiff.

5  35.    Solgen's practices in the instant matter violated the *Juarez* public injunction.
6  Specifically, and as set forth in detail *infra*, Solgen continued to use a Home Improvement Offer
7  that failed to comply with Civ. Code §1689.7, in violation of both California law and the Public
8  Injunction.

9  36.    On July 5, 2024, the CSLB revoked Solgen's license based on over thirty different
10  violations of the Business & Professions Code.[9]

11  37.    Thereafter, Solgen went out of business. Despite Solgen closing its doors, leaving
12  projects unfinished, leaving customers without repair opportunities, and with no ability for
13  customers to turn to Solgen to honor its warranty obligations, Defendants continued to demand
14  full monthly payments from their mutual customers.

15  **C.    Plaintiff Never Received a Compliant Home Improvement Offer or a Working**
16        **Product Despite Defendants Demanding Monthly Payments**

17  38.    Plaintiff owns a home with his wife in Madera, California. Plaintiff is a monolingual
18  Spanish speaker.

19  39.    Around September 2022, after the *Juarez* Public Injunction had been in effect for over
20  seven months, two Solgen salespeople came to Plaintiff's house to sell solar panels. The
21  salespeople spoke Spanish with Plaintiff and told him they were from a company called "Core
22  Energy." Core Energy was a dba for Solgen. The salespeople told Plaintiff that he would save
23  money on his electrical bills if he got solar panels. They assured Plaintiff that the panels would
24  produce a surplus of energy that would result in a credit on his bills. Plaintiff trusted and relied
25  upon the salespeople that they were offering working solar panels and financing that would save

26
27  [9] *See* Accusation against Solgen Construction LLC, *et al.*, filed by Attorney General of California, dated June 28, 2022, pp. 17-22, *available at* https://www.cslb.ca.gov/CompletedPDF/Accusations/N2021-327/N2021-327-20220628-Accusation.pdf (last visited April 17, 2025); *See* Decision and Order as to Solgen Construction LLC, *et*
28  *al.*, dated May 17, 2024, p. 23, *available at* https://www.cslb.ca.gov/CompletedPDF/Accusations/N2021-327/N2021-327-20240505-Decision.pdf (last visited April 17, 2025).

1   Plaintiff significant money on his electricity bill and that he would even produce a surplus of

2   energy resulting in a credit. Plaintiff never would have considered what the salespeople were

3   offering if he knew they were not offering him working panels that would save him money.

4   40.   The salespeople then asked Plaintiff for copies of his PG&E bill, as well as information

5   about his income and property taxes, to see if he qualified. They also asked for Plaintiff's email

6   address and social security number. The salespeople used a tablet, but Plaintiff could not see

7   what they were doing. Eventually, the Solgen salespeople told Plaintiff that he qualified and

8   pulled up a contract on the tablet.

9   41.   Unbeknownst to Plaintiff, and on information and belief, the Solgen Home Improvement

10  Offer did not comply with Civ. Code §1689.7 and violated the terms of the *Juarez* Public

11  Injunction.

12  42.   The salespeople also presented Plaintiff with an electronic Sunlight/Cross River Loan

13  Agreement Offer. The Sunlight/Cross River Loan Agreement Offer states that the financing is

14  for a principal amount of $36,170.00 and a finance charge of $19,400.97, for a total payment of

15  $55,570.97 over 25 years, with Solgen as the installer and warrantor.

16  43.   Solar panels were thereafter placed on Plaintiff's roof. However, a city inspector later

17  came to the house and informed Plaintiff that the panels were not permitted and not code

18  compliant, so they were never turned on or functional. The city inspector instructed Plaintiff to

19  remove the panels from his roof.

20  44.   Solgen then removed the panels from Plaintiff's roof.

21  45.   Nevertheless, despite the panels having been removed and thus Plaintiff receiving no

22  benefit from them, Sunlight and Cross River started demanding monthly payments for the

23  nonfunctional solar panels. Plaintiff eventually started receiving collections communications

24  from National Recovery, hounding him to make payments.

25  46.   On information and belief, Cross River filed a UCC-1 Financing Statement with the

26  California Secretary of State for the solar panels affixed to Plaintiff's property.

27  47.   To this day, the panels have never worked, and Solgen is out of business and the CSLB

28  revoked its license. Nevertheless, Defendants continued and continue to demand monthly

1 | payment.

2 | **D.    The Solgen Home Improvement Offer Failed to Comply With Either the HSSA or**

3 | **Public Injunction and Defendants Refused to Acknowledge Lawful Revocation**

4 | 48.    The Legislature enacted the HSSA in 1971 to protect California consumers against the

5 | possibility of undue sales pressure where a sales agent comes to a buyer's home or the

6 | transaction is otherwise consummated anywhere other than the seller's appropriate trade

7 | premises.

8 | 49.    While home solicitation is the core conduct addressed by the HSSA, its reach is far

9 | broader. The HSSA defines "home solicitation" to mean "any contract, whether single or

10 | multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or

11 | services or both, *made at other than appropriate trade premises* in an amount of twenty-five

12 | dollars ($25) or more, including any interest or service charges." Civ. Code §1689.5(a)

13 | (emphasis added). The definition focuses not on who initiated the contact between the buyer

14 | and the seller or how it was initiated, but on "the place where the contract was made."

15 | *Nordeman v. Dish Network LLC* (N.D. Cal. 2021) 525 F.Supp.3d 1080, 1085; *see also Louis*

16 | *Luskin & Sons, Inc. v. Samovitz* (1985) 166 Cal.App.3d 533, 536 ("As is evident from this

17 | language, the test for applicability of the statute is not whether the contract is made at the

18 | buyer's home but whether it is made somewhere other than the seller's place of business.").

19 | "Appropriate trade premises" means "premises where either the owner or seller normally carries

20 | on a business." Civ. Code §1689(b).[10]

21 | 50.    The HSSA applies separately to both the Solgen Home Improvement Offer and the

22 | Sunlight/Cross River Loan Agreement Offer, since both were never executed at an appropriate

23 | trade premises and are otherwise required to comply with Civ. Code §1689.5, *et seq.*

24 | 51.    The term "goods" in that statute is broadly defined to mean any "tangible chattels

25 |

26 | [10] Even when a consumer's contact with the business is over the phone, the fact that the signing of an offer or contract was in the consumer's residence subjects the offer or contract to the requirements of the HSSA. *Nordeman*, 525 F.Supp.3d at 1086; *see also Louis Luskin*, 166 Cal.App.3d at 537 ("Although the home solicitation

27 | statute is commonly thought of as protecting consumers from high pressure sales tactics of door-to-door solicitors, the clear, unambiguous language of the statutes gives it a much broader application."); *People v. Toomey* (1984)

28 | 157 Cal.App.3d 1, 13–14.

1   bought for use primarily for personal, family, or household purposes," with exceptions not
2   relevant to this case. Civ. Code §1689.5(c).

3   52.     Solar panels sold under a Solgen Home Improvement Offer are clearly "goods" as
4   covered by Civ. Code §1689.5(c). Loans originated through Sunlight's platform by Cross River
5   are made in connection with the sale of goods or services (i.e., the goods and services promised
6   in the home improvement contracts) and are therefore also covered by the HSSA. Civ. Code
7   §1689.5(d).

8   53.     Any agreement covered by the HSSA must use the precise language mandated by the
9   statute and must include copies of a specified form for cancellation to be used at the consumer's
10  option to cancel the contract. Civ. Code §§1689.6(a)(2)(the buyer has the right to cancel a home
11  solicitation sales contract or offer "until midnight of the third business day, or until midnight on
12  the fifth business day if the buyer is a senior citizen, after the day on which the buyer signs the
13  agreement or offer to purchase *which complies with Section 1689.7*") (emphasis supplied);
14  1689.7(a)(4)(A).

15  54.     If a seller fails to strictly comply with these notice provisions, then an offer or contract
16  was never formed and the buyer retains an indefinite cooling off period, unless and until the
17  seller fully complies with the HSSA. Civ. Code §1689.7(g). The seller is not entitled to any
18  compensation in the event of revocation or cancellation and must refund all payments made by
19  the consumer—even when the seller has already performed services. Civ. Code §1689.11(c) ("If
20  the seller has performed any services pursuant to a home solicitation contract or offer prior to its
21  cancellation, the seller is entitled to no compensation."); *Nordeman*, 525 F.Supp.3d at 1086 ("A
22  violation of the statute precludes any obligation of the buyer to pay for services from the seller
23  prior to cancellation."). If goods have been provided, the seller can recover them at its own
24  expense if it acts promptly and follows the statute's procedural requirements, including the
25  required refund of any payments made by the consumer pursuant to the now-cancelled contract
26  or otherwise revoked offer. Civ. Code §1689.10(a) and (c).

27  55.     On information and belief, the Solgen Home Improvement Offer is identical to the
28  Solgen form that was subject to the *Juarez* public injunction and fails to comply with the HSSA

1   in at least the following respects:

2

| HSSA Requirement | Solgen Home Improvement Offer |
|---|---|
| "The contract . . . shall include in immediate proximity to the space reserved for the buyer's signature, [the statutorily required cancellation language] in a size equal to at least 12-point boldface type, which shall be dated and signed by the buyer[.]"<br><br>Civ. Code §1689.7(a)(4)(A). | The Home Improvement Offer fails to include the buyer's signature or the date he signed the offer in the section with the purported statutory cancellation language. |
| The contract or offer must include the statutorily required cancellation language set forth in quotes in Civ. Code §1689.7(a)(4)(A). | The Home Improvement Offer fails to include the statutorily required language. The required language is explicitly set forth in Civ. Code §1689.7(a)(4)(A). The Offer does not include this language at all. Instead, it includes a "Notice of Cancellation" that does not come close to the required statutory language. |
| The contract or offer "shall contain on the first page, in a type size no smaller than that generally used in the body of the document, the following: (1) the name and address of the seller to which the notice is to be mailed, and (2) the date the buyer signed the agreement or offer to purchase."<br><br>Civ. Code §1689.7(b). | The Home Improvement Offer fails to include this information on the first page. It also does not include this information on the purported "Notice of Cancellation." |

18   56.     Cross River is subject to all claims and defenses Plaintiff may bring against Solgen

19   under the FTC's Holder Rule.

20   57.     On or around April 4, 2025, given the fact that Plaintiff never received a HSSA-

21   compliant Home Improvement Offer from Solgen and thus an agreement was never formed in

22   the first instance, and pursuant to the FTC's Holder Rule, Plaintiff, through his counsel at

23   Housing and Economics Rights Advocates, exercised his absolute right to revoke or otherwise

24   cancel the Offers.

1   58.    Almost immediately after Plaintiff's counsel sent the lawful revocations on Plaintiff's

2   behalf, Sunlight's head of litigation snidely denied Plaintiff's lawful cancellation. Shockingly,

3   in doing so, Sunlight acknowledged the pervasiveness of its HSSA non-compliance and its

4   callous and continued refusal to take consumers' claims seriously:

5   **From:** Shockley, Brett <brett.shockley@sunlightfinancial.com>
    **Sent:** Friday, April 4, 2025 4:03 PM

6   **To:** Mary Day <mday@heraca.org>; cs@coreenergygroup.com; csmith@completesolar.com;
    jtjones@completesolar.com; Info <info@sunlightfinancial.com>; Legal Escalations

7   <legalescalations@sunlightfinancial.com>
    **Subject:** Re: Adnan Alfaro - 210 S A Street, Madera, California 93638

8   Very creative, Attorney Day, it's almost like you haven't sent the same template a dozen times.

9

10  59.    Sunlight, Cross River, and Solgen have all failed to acknowledge Plaintiff's lawful

11  revocation and/or cancellation and have failed to fulfill their statutory obligation to return to

12  Plaintiff all payments he has made pursuant to the Sunlight/Cross River Loan Agreement Offer.

13  To this day, Defendants continue to insist that Plaintiff owes money to Defendants, and

14  National Recovery continues to deduct monthly payments from Plaintiff.

15                          **FIRST CAUSE OF ACTION**
                   **(Declaratory Relief, Code of Civ. Proc. §1060)**
16            **(On Behalf of Plaintiff Against Sunlight and Cross River)**

17  60.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

18  every allegation contained in the preceding paragraphs.

19  61.    In addition to its own violations of law, Cross River is subject to all claims and defenses

20  that Plaintiff has against Solgen under the FTC's Holder Rule.

21  62.    An actual and present controversy exists between the parties regarding their rights and

22  duties in connection with the Sunlight/Cross River Loan Agreement Offer and Solgen Home

23  Improvement Offer. Specifically, Plaintiff contends, and is informed and believes that

24  Defendants deny, each of the following:

25              a. Because Plaintiff's Solgen Home Improvement Offer failed to include the

26              statutorily required language and was thus never lawfully formed in the first

27              instance, Plaintiff was entitled to revoke the offer at any time;

28              b. Because Cross River is subject to all claims and defenses Plaintiff may bring

                                    13
                                COMPLAINT

1     against Solgen under the FTC's Holder Rule and thus Plaintiff was entitled to

2     revoke the Offers at any time; and

3     c. Having exercised the right to revoke the Sunlight/Cross River Loan Agreement

4     Offer and Solgen Home Improvement Offer pursuant to the HSSA and the Holder

5     Rule, any duties or obligations stated in the Offers are inapplicable to Plaintiff and

6     no such duties or obligations can be enforced against him.

7   63.   Plaintiff desires a judicial determination of his rights and duties (if any) under the

8 Sunlight/Cross River Loan Agreement Offer and Solgen Home Improvement Offer.

9     WHEREFORE, Plaintiff prays for relief as set forth below.

10
### SECOND CAUSE OF ACTION
**(Violations of the Home Solicitation Sales Act, Civil Code §1689.5, *et seq*.)**
11
**(On Behalf of Plaintiff Against Sunlight and Cross River)**

12   64.   Plaintiff realleges and incorporates by reference as though fully set forth herein each and

13 every allegation contained in the preceding paragraphs.

14   65.   Cross River is subject to all claims and defenses that Plaintiff has against Solgen under

15 the FTC's Holder Rule.

16   66.   The Sunlight/Cross River Loan Agreement Offer and Solgen Home Improvement Offer

17 that Defendants seek to enforce against Plaintiff were entered into at Plaintiff's home (not an

18 "appropriate trade premise") and are offers for "goods" and/or "services," and is regulated by

19 and subject to the HSSA.

20   67.   Solgen violated Civil Code §1689.5, *et seq.* by failing to provide Plaintiff with

21 statutorily compliant notice of his three-day right to cancel and by failing to return the amounts

22 collected from him within ten (10) days of the date he exercised his statutory right to cancel or

23 revoke any Offers. The form offer used by Solgen does not include the statutory prescribed

24 three-day right to cancel and is, therefore, facially violative of the Home Solicitation Sales Act.

25   68.   Solgen is under a court-ordered Public Injunction to cancel or revoke any and all offers

26 that do not comply with the HSSA. Sunlight and Cross River were well aware of Cross River's

27 obligations under the FTC's Holder Rule.

28   69.   On information and belief, Solgen's Home Improvement Offer fails to comply with the

1   HSSA in at least the following respects:

2         a.  Solgen's Home Improvement Offer fails to include a statutorily compliant notice

3           of a consumer's three-day right to cancel. (violation of Civ. Code

4           §1689.7(a)(4)(A).

5         b.  Solgen's Home Improvement Offer fails to include the statutorily required

6           language. The required language is explicitly set forth in Civ. Code

7           §1689.7(a)(4)(A). The Offer does not include this language at all. Instead, it

8           includes a "Notice of Cancellation" that does not come close to the required

9           statutory language.

10        c.  Solgen's Home Improvement Offer fails to "contain on the first page, in a type

11          size no smaller than that generally used in the body of the document, the

12          following: (1) the name and address of the seller to which the notice is to be

13          mailed, and (2) the date the buyer signed the agreement or offer to purchase."

14          Civ. Code §1689.7(b)It also does not include this information in on the purported

15          "Notice of Cancellation."

16   70.   Plaintiff has exercised his statutory right to revoke the Solgen Home Improvement Offer

17   and the Sunlight/Cross River Loan Agreement Offer.

18   71.   If a consumer revokes an offer or otherwise cancels a contract governed by the HSSA,

19   the other party must tender to the consumer within ten (10) days of revocation or cancellation

20   all amounts paid by the consumer under the offer or contract. Civ. Code §1689.10. Sunlight and

21   Cross River have not fulfilled their legal duty to repay Plaintiff the sums he paid under the

22   Offers.

23    WHEREFORE, Plaintiff prays for relief as set forth below.

24                   **THIRD CAUSE OF ACTION**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**
25                   **(On Behalf of Plaintiff Against all Defendants)**

26   72.   Plaintiff realleges and incorporates herein by reference as though fully set forth herein

27   each and every allegation contained in the preceding paragraphs.

28   73.   The Rosenthal Act, Civil Code §1788, *et seq.* was enacted in 1976 to ensure the integrity

1    of our banking and credit industry. Civil Code §1788.1(b). The Legislature found that "unfair or

2    deceptive debt collection practices undermine the public confidence which is essential to the

3    continued functioning of the banking and credit system and sound extensions of credit to

4    consumers." Civil Code §1788.1(a)(1).

5    74.    At all times relevant herein, Sunlight, Cross River, and National Recovery are "debt

6    collectors" within the meaning of Civil Code §1788.2(c). Defendants regularly and in the

7    ordinary course of business, on behalf of themselves or others, engage in acts and practices in

8    connection with the collection of consumer debt.

9    75.    The debt which Defendants are attempting to collect from Plaintiff is a "consumer debt"

10   within the meaning of Civil Code §1788.2(f). Plaintiff is a "debtor" within the meaning of Civil

11   Code §1788.2(h) in that they are natural persons from whom Defendants sought and continue to

12   seek to collect a consumer debt alleged to be due and owing.

13   76.    Defendants have a non-delegable duty under the Rosenthal Act not to commit violations

14   of the Act, and not to allow its agents to commit such violations, which duty Defendants are

15   prohibited from violating.

16   77.    Since April 2025, Defendants have attempted to collect a non-existent debt from

17   Plaintiff. Defendants made false representations that Plaintiff owed monthly payments to

18   Defendants even though Plaintiff never had any obligation to Defendants after he lawfully

19   revoked or otherwise cancelled the unlawful Sunlight/Cross River Loan Agreement Offer and

20   Solgen Home Improvement Offer. This was a violation of Civil Code §1788.17 (through

21   violation of 15 U.S.C. §1692e, including §1692e(2)).

22   78.    Even after Plaintiff lawfully revoked or otherwise cancelled any Offers with Sunlight,

23   Cross River, and Solgen, Defendants continued to attempt to collect a non-existent debt from

24   Plaintiff. National Recovery continues to deduct monthly payments from Plaintiff.

25   79.    Defendants have violated the Rosenthal Act. The violations include, but are not limited

26   to the following:

27        a.    Defendants made and used false, deceptive, and misleading representations in an

28              attempt to collect on the account that Plaintiff lawfully revoked or otherwise

1                  cancelled, in violation of California Civil Code § 1788.17;[11]

2        b.     Defendants misrepresented the character, amount, or legal status of the account

3              that Plaintiff lawfully revoked or otherwise cancelled, in violation of California

4              Civil Code §§ 1788.13(e) and 1788.17;[12]

5        c.     Defendants are attempting to collect on the account that Plaintiff lawfully

6              cancelled or revoked, an action that cannot lawfully be taken, in violation of

7              California Civil Code 1788.13(e) and 1788.17;[13]

8        d.     Defendants misrepresented that the account is lawfully owed by Plaintiff when

9              Plaintiff lawfully revoked or otherwise cancelled the Offers, in violation of

10             California Civil Code § 1788.17;[14] an

11        e.     Defendants are attempting to collect interest, fees, or other charges from Plaintiff

12              that are not expressly authorized by the law or otherwise permitted by law, in

13              violation of California Civil Code §§1788.13(e) and 1788.17.[15]

14   80.      Furthermore, Defendants violated Civ. Code §1788.17, which requires every debt

15 collector collecting or attempting to collect a consumer debt shall comply with the provisions of

16 15 U.S.C. §1692b to §1692j of 15 U.S.C. §1692.

17   81.      As a proximate result of Defendants' violations of the Rosenthal Act, Plaintiff suffered

18 damages in amounts to be proven at trial.

19   82.      Plaintiff is entitled to recover his actual damages, including but not limited to emotional

20 distress and other compensable general damages, pursuant to Civil Code §1788.17,

21 incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code

22 §1788.30(a).

23   83.      Plaintiff is also entitled to recover statutory damages pursuant to Civil Code §1788.17,

24 which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the

25 alternative, Civil Code §1788.30(b).

26

27    [11] 15 U.S.C. §§ 1692e and 1692e(10).
    [12] 15 U.S.C. § 1692e(2)(A).

28     [13] 15 U.S.C. § 1692e(2), 1692e(5) and 1692e(10).
    [14] 15 U.S.C. § 1692e, 1692e(5), and 1692e(10).
    [15] 15 U.S.C. § 1692f(1).

1    84.    Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17,

2    incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil Code

3    §1788.30(c).

4         WHEREFORE, Plaintiff prays for relief as set forth below.

5                                        **FOURTH CAUSE OF ACTION**
                       **(Violations of Business and Professions Code §17200, *et seq.*)**
6                            **(On Behalf of Plaintiff Against all Defendants)**

7    85.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

8    every allegation contained in the paragraphs above.

9    86.    In addition to its own violations of law, Cross River is subject to all claims and defenses

10   that Plaintiff has against Solgen under the FTC's Holder Rule.

11   87.    Plaintiff has standing to bring this claim because he has suffered injury in fact and lost

12   money or property as a result of the acts and practices alleged herein. Specifically, Plaintiff has

13   made payments to Defendants which have not been returned to him despite lawfully revoking or

14   otherwise cancelling the Offers.

15   88.    The UCL prohibits unfair competition, defined to include any unlawful, unfair, or

16   fraudulent business act or practice. Beginning on an exact date unknown to Plaintiff, but at all

17   times relevant herein, Defendants committed and are continuing to commit acts of unfair

18   competition proscribed by the UCL, including the practices alleged herein.

19   89.    The business acts of Defendants, as hereinabove alleged, constitute unlawful business

20   practices in that Cross River and Sunlight's acts and practices violate Civ. Code §1689.5 *et seq.*

21   and Defendants' acts and practices violate Civ. Code §1788, *et seq.*

22   90.    The business acts of Defendants, as hereinabove alleged, also constitute unlawful

23   practices under federal law in at least the following respect: Cross River violated the Federal

24   Trade Commission Holder in Due Course rule, 16 C.F.R. §433, *et seq.* by failing to comply with

25   the Holder in Due Course Rule, including by denying liability.

26   91.    The business acts and practices of Defendants, as hereinabove alleged, constitute unfair

27   business practices under any of the alternative applicable formulations: (1) the conduct offends

28   established public policy, or is immoral, unethical, oppressive, unscrupulous or substantially

1  injurious to consumers, *McKell v. Wash. Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1473; (2)

2  the conduct's utility is outweighed by the gravity of the harm to the victim, *S. Bay Chevrolet v.*

3  *Gen. Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 886–87; and (3) the conduct is (i)

4  substantially injurious to the consumer, where (ii) the injury is not outweighed by

5  countervailing benefits to consumers or competition, and (iii) the injury is not one that

6  consumers themselves could reasonably have avoided, *Camacho v. Automobile Club of S. Cal.*

7  (2006) 142 Cal.App.4th 1394, 1403.

8  92.    The business acts and practices of Defendants as hereinabove alleged, constitute

9  "fraudulent" business practices in that the acts and practices are likely to deceive the public and

10  affected consumers as to their legal rights and obligations; and by use of such deception, induce

11  consumers to enter transactions which they otherwise would decline or fail to revoke or

12  otherwise cancel transactions that they would otherwise revoke or cancel.

13  93.    The unlawful, unfair, and fraudulent business acts and practices described herein present

14  a continuing threat in that Defendants are currently engaging in such acts and practices and, on

15  information and belief, will likely persist and continue to do so unless and until an injunction is

16  issued by the Court.

17  94.    Pursuant to Business and Professions Code §17203, Plaintiff seeks an injunction for the

18  unlawful, unfair, and fraudulent acts engaged in by Defendants. Specifically, injunctive relief

19  against Defendants is appropriate to halt their unlawful, unfair, and fraudulent conduct in failing

20  to provide consumers with loan documents which contain all of the statutorily required rights to

21  cancel, and notices of those rights to cancel, guaranteed by law, and continuing to collect on

22  non-existent debts.

23  95.    Plaintiff is entitled to restitution of all amounts taken by Defendants.

24  96.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action

25  under Code of Civil Procedure §1021.5 because:

26          a.  A successful outcome in this action will result in the enforcement of

27              important rights affecting the public interest by protecting the general

28              public from unfair, unlawful, and deceptive practices.

1          b.  This action will result in a significant public benefit by compelling

2              Defendants to comply with the law.

3          c.  Unless this action is prosecuted, Defendants' activities will go unremedied

4              and will continue unabated.

5          d.  Plaintiff is an individual of modest means with limited access to the courts

6              and the civil justice system. Unless attorneys' fees, costs and expenses are

7              awarded against Defendants, Plaintiff will not recover the full measure of

8              his loss.

9      WHEREFORE, Plaintiff prays for relief as set forth below.

10                        **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiff prays for relief as follows:

12    (1)    An award of actual damages;

13    (2)    An award of general damages;

14    (3)    An award of statutory damages;

15    (4)    An award of nominal damages;

16    (5)    An award of restitution;

17    (6)    An order finding and declaring that any alleged offers or contracts between Plaintiff,

18  Cross River, Sunlight, and their agents, including Solgen, were never lawfully formed in the

19  first instance and/or have been revoked or otherwise cancelled;

20    (7)    An order finding and declaring that any items affixed to Plaintiff's home by Solgen or

21  any other contractor or subcontractor involved in the transaction are the property of Plaintiff

22  without obligation to pay for them;

23    (8)    An order finding and declaring that Defendants' acts and practices challenged herein are

24  unlawful, unfair, and fraudulent;

25    (9)    A comprehensive public injunction permanently barring Defendants from engaging in

26  the unlawful, unfair, and fraudulent business practices challenged herein and compelling

27  Defendants to conform their conduct to the requirements of the law;

28    (10)    Prejudgment interest at the maximum legal rate;

1  (11)  An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and

2  prosecution of this action; and

3  (12)  Any other and further relief as this Court shall deem just and proper.

4  Dated: June 12, 2025                                KEMNITZER, BARRON & KRIEG, LLP

5                                                      HOUSING AND ECONOMIC RIGHTS
                                                       ADVOCATES
6

7

8                                By:    _____
                                       KRISTIN KEMNITZER
9                                      ADAM McNEILE

10                                **JURY TRIAL DEMANDED**

11       Plaintiff demands a trial by jury on all issues so triable.

12  Dated:  June 12, 2025                               KEMNITZER, BARRON & KRIEG, LLP

13                                                      HOUSING AND ECONOMIC RIGHTS
                                                       ADVOCATES
14

15

16                               By:    _____
                                       KRISTIN KEMNITZER
17                                     ADAM McNEILE

18

19

20

21

22

23

24

25

26

27

28

21
COMPLAINT